# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| PATRICIA ANN RINIKER, <br><br> Plaintiff, <br><br> vs. <br><br> NANCY A. BERRYHILL, <br> Acting Commissioner of Social Security, <br><br> Defendant. | No. 16-CV-1035-KEM <br><br> **MEMORANDUM OPINION AND ORDER** |

Plaintiff Patricia Ann Riniker seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Riniker argues that the administrative law judge (ALJ) could not assign little weight to the opinion of her treating psychiatrist at step two of the disability determination because the record contained no other opinion evaluating the severity of her mental impairments. Relatedly, Riniker argues that the ALJ erred by finding she suffered no severe mental impairments at step two. Riniker also argues that the ALJ erred by failing to mention her lengthy work history when evaluating her subjective complaints. I **affirm** the ALJ's decision.

## I.  BACKGROUND[1]

Riniker worked as a secretary at a college for thirty-two years. AR 40-41.[2] Her job duties generally included answering the phone, filing, and inputting data from

---

[1] For a more thorough overview, see the Joint Statement of Facts (Doc. 21).

[2] "AR" refers to the administrative record below (Docs. 14 to 14-8).

applications into the computer system. AR 41. She testified that she quit in February 2011 because she was doing the work of two people, which made her stressed and (in turn) depressed, and her primary care physician at the time recommended that she find another job. AR 41-42, 245. She worked at a temporary employment agency for a few months after that, but she testified that her health problems and the cost of health insurance (which was not provided through this new employment) caused her to quit. AR 42, 245. She began babysitting for her grandchildren a few days a week and working about ten hours a week at her husband's automobile repair business, making appointments and bookkeeping. AR 44, 46-48, 54-55, 250-51, 253-54, 266, 271, 339, 532, 534.

Riniker has suffered from Raynaud's disease since the 1980s, a disease that causes her fingers, toes, and ears to feel numb or cold in response to cold temperatures or stress. AR 21, 340, 369, 450. She testified that she received treatment in 2012 and 2013 at Women's Health and Wellness, which has since closed, and she has been unable to track down her treatment records from this time. AR 42, 48. In February 2014, she began treatment for her Raynaud's disease with Dr. George Isaac, a rheumatologist. AR 369. Around June 2014, Dr. Isaac diagnosed Riniker with fibromyalgia and Sjogren's syndrome, an autoimmune disorder primarily marked by dry eyes and dry mouth. AR 479.

Feeling "overwhelmed" by her health problems, Riniker began seeing psychiatrist Dr. Roger Shafer in July 2014 at the recommendation of Dr. Isaac. AR 479. Dr. Shafer diagnosed Riniker with depression and post-traumatic stress disorder (PTSD), prescribed medications, and referred her for therapy with licensed social worker Amy Mahoney[3] (Therapist Mahoney). AR 480-81. Her first appointment with Therapist Mahoney occurred in August 2014. AR 532. Her treatment with Therapist Mahoney involved eye movement desensitization and reprocessing (EMDR) therapy for her PTSD symptoms,

---

[3] Therapist Mahoney is not related to the undersigned.

2

which stemmed from being sexually assaulted by her husband's boss more than twenty years ago and facing harassment from him after she and her husband filed a civil lawsuit. AR 534, 544.

Riniker applied for DI benefits on January 5, 2014, alleging she had been disabled since January 1, 2012, due to Raynaud's disease, stress-induced headaches, stress-induced stomach problems, and migraine headaches. AR 70. Riniker's application for DI benefits was denied initially in March 2014 and on reconsideration in April 2014. AR 70-79, 81-90. As she had not alleged suffering any mental impairments (other than "stress-induced" physical problems), nor received any mental-health treatment or diagnoses at that time, no state agency psychological consultants evaluated the severity of her mental impairments and whether they limited her ability to function. *Id.*

Riniker requested a hearing before an ALJ, and ALJ Tela L. Gatewood held a video hearing on August 17, 2015. AR 35. The case was transferred to ALJ Michael D. Shilling, who held a supplemental video hearing on November 18, 2015 (the transcript from which is not in the record). AR 19. On December 23, 2015, ALJ Shilling issued a written opinion following the familiar five-step process outlined in the regulations[4] to determine Riniker was not disabled. AR 19-28. At step one, the ALJ[5] determined that Riniker's work for her family did not rise to the level of substantial gainful activity. AR 21. At step two, the ALJ found that Riniker's Sjogren's syndrome, fibromyalgia, and Raynaud's disease constitute severe impairments, but not her depression or PTSD, since

---

[4] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* 20 C.F.R. § 404.1520(a)(4). The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

[5] All further references to the ALJ are to ALJ Shilling.

the ALJ found these impairments cause no "more than minimal limitation in [Riniker's] ability to perform basic mental work activities." AR 22-23. To make this determination, the ALJ relied on treatment notes, function reports, and Riniker's activities of daily living. AR 22-23. The ALJ assigned "minimal weight" to a joint opinion signed by both Dr. Shafer and Therapist Mahoney, who had determined Riniker suffered from moderate and marked limitations in the categories of activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation (the ALJ found Riniker suffered from no more than mild limitations in these categories). AR 22-23, 599-601. The ALJ went on to find that Riniker's impairments did not meet or equal a listing (step three) and that she could perform her past relevant work as a secretary (step four) based on his determination of Riniker's residual functional capacity (RFC),[6] which included no mental limitations. AR 23-27.

The Appeals Council denied Riniker's request for further review on July 28, 2016 (AR 1-3), making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Riniker filed a timely complaint in this court (Doc. 4), seeking judicial review of the Commissioner's decision. *See* 20 C.F.R. § 422.210(c).

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby*, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of

---
[6] RFC is "'what the claimant can still do' despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (quoting *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)).

4

those positions represents the [ALJ's] findings, [the court] must affirm the decision." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

Riniker argues that the ALJ erred at step two by failing to include her depression and PTSD as severe impairments. She also argues that the ALJ erred by discounting some of her subjective complaints without mentioning her lengthy work history, a factor which supports credibility.

### A. *Step Two Determination*

Riniker challenges the ALJ's failure to include her PTSD and depression as severe impairments. At step two, once the ALJ determines that the claimant suffers from a medically determinable mental impairment, the ALJ must determine whether the impairment is severe by evaluating the degree of functional limitation it causes. 20 C.F.R. § 404.1520a(b)-(d) (2015).[7] An impairment is severe if it "significantly limit[s] [the claimant's] physical or mental ability to do basic work activities,"—for example, the ability to "[u]nderstand[], carry[] out, and remember[] simple instructions; . . . [u]se . . . judgment; . . . [r]espond[] appropriately to supervision, [coworkers,] and usual work

---

[7] The Social Security Administration made a substantive change to § 404.1520a(c)(3) effective January 17, 2017 (substituting the category of ability to "adapt or manage oneself" for the category of "episodes of decompensation"). *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66138 (Sept. 26, 2016); Proposed Revised Medical Criteria for Evaluating Mental Disorders, 75 Fed. Reg. 51336, 51340 (Aug. 19, 2010). This change does not apply, however, to claims pending review in the federal courts decided by the Social Security Administration before January 17, 2017. *See* 81 Fed. Reg. at 66138 n.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."); *see also Curran-Kicksey v. Barnhart*, 315 F.3d 964, 967 (8th Cir. 2003) (applying rule in effect at the time of the ALJ's decision when the Social Security Administration stated in the Federal Register that the new rule did not apply to claims pending judicial review in federal court). The Social Security Administration also made changes to the rules (including § 404.1520a) effective March 27, 2017, which incorporate the changes effective January 17, 2017 (that are not retroactive). *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). Although some of these rules, by their terms, apply retroactively, they are substantively the same as the old rules, and for the sake of clarity, I cite to the rules in effect at the time of the ALJ's decision.

situations; [or] . . . [d]eal[] with changes in a routine work setting." *Id.* §§ 404.1520(c), 404.1521; *see also Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011). In other words, a mental impairment is not severe if it "would have no more than a minimal effect on the claimant's ability to work." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003) (quoting *Simmons v. Massanari*, 264 F.3d 751, 755 (8th Cir. 2001)); *accord* 20 C.F.R. § 404.1520a(d)(1). "Severity is not an onerous requirement for the claimant to meet" (and has been described as a de minimus standard), "but it is also not a toothless standard." *Kirby*, 500 F.3d at 708; *Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989). The ALJ must apply a "special technique" to evaluate the severity of a mental impairment, considering the claimant's limitations in "four broad functional areas . . . : [a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3). Although subject to exception, as a general rule, if the claimant suffers no more than mild limitations in each category, the claimant's mental impairments are not severe. *Id.* § 404.1520a(d)(1).

Here, the ALJ recognized that Riniker suffered from depression and PTSD, but he found that these impairments were not severe because "considered singly and in combination, [they] do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." AR 22. The ALJ found that Riniker suffered from no more than mild limitations in the first three "broad functional areas" and that she suffered no episodes of decompensation of extended duration. AR 22-23. In making this determination, the ALJ did not credit Riniker's testimony that she has difficulties concentrating and staying on task, cries every day, suffers nightmares and poor sleep, and often experiences anxiety and paranoia when she leaves her house. AR 22, 43-44, 48-50, 59; *see also* AR 328-29. The ALJ also assigned minimal weight to Dr. Shafer and Therapist Mahoney's joint opinion that Riniker suffered decreased energy, nightmares, weekly severe panic attacks, and moderate difficulties in concentrating, social functioning, and performing activities of daily living, which would cause her to miss work more than four days a month. AR 599-601.

Rinker argues that an opinion signed by her treating psychiatrist that she suffers from more than minimal mental limitations establishes, as a matter of law, that the step-two threshold is met. Doc. 22 at 8. But the Eighth Circuit has recognized that the ALJ may discount the opinion of a treating source at step two (just as an ALJ may discount the opinion of a treating source when evaluating a claimant's RFC). *See Dixon*, 353 F.3d at 606; *Schafer v. Apfel*, No. 99-1683, 1999 WL 721335, at *1 (8th Cir. Sept. 16, 1999) (per curiam); *see also Ziemann v. Berryhill*, No. 4:16 CV 1198 RWS/DDN, 2017 WL 5495795, at *3, *6 (E.D. Mo. Oct. 23, 2017), *report and recommendation adopted*, 2017 WL 5478616 (E.D. Mo. Nov. 15, 2017). As Riniker recognizes (Doc. 22 at 10-12), 20 C.F.R. § 404.1527(c) sets forth the factors an ALJ must consider when determining the weight to assign a medical opinion. Although the ALJ did not explicitly discuss each factor, such as Dr. Shafer being a treating source and a specialist, "[f]ailure to discuss each factor does not mean the ALJ did not consider them." *Molnar v. Colvin*, No. 412-CV-1228-SPM, 2013 WL 3929645, at *2 (E.D. Mo. July 29, 2013) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 n.3 (8th Cir. 1998)). Here, the ALJ acknowledged (in his discussion of Riniker's RFC) that he "considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527." AR 24.

The ALJ found that Dr. Shafer and Therapist Mahoney's opinion was "inconsistent with the essentially normal mental status examinations and the claimant's wide-range of activities of daily living." AR 23. An ALJ may discount a medical opinion if it is "inconsistent with . . . evidence on the record as a whole," *Dixon*, 353 F.3d at 606, even if other factors weigh in favor of crediting the opinion, such as the fact that it was issued by a treating source, *see id.*, or a specialist, *see Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000). The ALJ may also consider whether a claimant's "daily activities belie the . . . limitations contained in [a treating source's] evaluation." *Anderson v. Astrue*, 696 F.3d 790, 793-94 (8th Cir. 2012).

The ALJ discounted Riniker's subjective complaints related to her mental limitations for the same reasons that he discounted Dr. Shafer and Therapist Mahoney's

7

opinion: the ALJ found her testimony inconsistent with "the medical record as a whole"—including treatment records, function reports, and Riniker's activities of daily living. AR 22-23. "[T]he ALJ may discount subjective complaints of . . . mental health problems that are inconsistent with medical reports, daily activities, and other such evidence." *Dixon*, 353 F.3d at 605 (quoting *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997)). An ALJ need not find an impairment severe based on a claimant's subjective complaints if there is "substantial evidence in the record to support the ALJ's decision to discount [a claimant's] subjective complaints." *Simmons v. Massanari*, 264 F.3d 751, 756 (8th Cir. 2001); *see also Dixon*, 353 F.3d at 605-06.

The ALJ's determination that Riniker's testimony and Dr. Shafer and Therapist Mahoney's opinion were inconsistent with the record as a whole is supported by substantial evidence. The ALJ noted that, contrary to Riniker's testimony and Therapist Mahoney and Dr. Shafer's opinion, in her January 2014 function report, Riniker reported no problems with concentrating: she stated she could pay attention for "[q]uite a while," about one hour; that her conditions do not affect her memory, concentration, or understanding; and that she can follow both oral and written instructions. AR 22, 275. Riniker did state in January 2014 that she would be limited in her ability to complete tasks, but only if they involved physical activity or being around other people. AR 275-76. The ALJ also noted that Riniker reported having no difficulties getting along with people or authority figures (although she did report handling stress poorly and that her ability to respond to change "depend[ed] on [the] situation"). AR 22, 275-76. Substantial evidence supports the ALJ's determination that the limitations Riniker reported in her function report are inconsistent with moderate limitations in memory or concentration or social functioning.

The ALJ also found that Riniker's testimony and Dr. Shafer and Therapist Mahoney's opinion were inconsistent with the treatment records. AR 22-23. The ALJ noted that Riniker's mental status examinations were "essentially normal." AR 22-23. When Riniker sought treatment for her physical ailments, providers noted a pleasant

8

affect and normal orientation in January 2011 (AR 347); no depression, anxiety, or agitation and intact judgment and insight in January 2014, September 2014, and January 2015 (AR 352, 568, 579); pleasant appearance in February, April, and July 2014 and February and March 2015 (370, 374, 390, 519, 521); and "normal" or "appropriate" mood and affect in February, March, and August 2014 (426, 439, 456). At those appointments, Riniker almost always denied suffering psychological symptoms (even after she began receiving mental-health treatment in July 2014). *See* AR 339, 369, 426, 437, 439, 468, 474, 567; *but see* AR 586-87 (denied depression but reported anxiety in May 2014). Therapist Mahoney also routinely noted normal mental status examinations (from August 2014 to October 2015), including appropriate affect; good or stable mood; intact insight, judgment, attention, memory, and concentration; and normal thought content. AR 532-33, 538, 541-42, 544-50, 552-558, 560-61, 674-80; *but see* AR 532 (noting at Riniker's first appointment in August 2014 that Riniker was tearful at times). At Riniker's first appointment with Dr. Shafer in July 2014, before she began taking medications, Dr. Shafer noted a flat (and occasionally tearful) affect, moderately depressed mood, normal orientation and memory, and good insight and judgment. AR 480. Although Dr. Shafer's later treatment notes do not include mental status examinations, he found her depression was in "partial remission" in December 2014 (as noted by the ALJ) and "much improved" in February 2015. AR 22, 485-86.

The ALJ also noted that Riniker did not seek mental-health treatment until July 2014 (and the treatment notes do not reflect psychological symptoms until May 2014, when Riniker reported suffering anxiety). AR 22, 479. In addition, Riniker did not allege PTSD nor depression in her application for DI benefits. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039-40 (8th Cir. 2001) ("[T]hat [claimant] did not allege depression in her application for disability benefits is significant" to whether her depression was a severe impairment, "even if the evidence of depression was later developed").

The mental-health treatment notes also reflect that Riniker reported improved symptoms once she began EMDR therapy and taking medications. In August 2014, she

9

reported feeling overwhelmed with planning a family vacation, and in September 2014, she thought she saw her attacker driving near her. AR 482, 541. In October 2014, she reported "doing ok[ay]" the last few weeks but struggling with the change in weather. AR 542. In November 2014, she discussed becoming panicked by an erratic male driver, triggering PTSD symptoms, but she also reported that EMDR was "beginning to be of some help." AR 484, 486. She evaluated her depressed mood as 4/10 in December 2014 and reported that a new sleep aide was working in January 2015. AR 485, 548. In February 2015, she reported that she had been in a good mood the past few weeks "until the last couple of days when" she felt "more irritable," and later in February, she again evaluated her depressed mood as 4/10. AR 486, 550. At three appointments in April 2015, she discussed her mood: first, she reported "feeling good" and suffering no "triggers"; then, being in an "irritable mood"; and finally, being in a "better mood." AR 556-58. She also reported suffering no new triggers in June 2015. AR 675. Therapist Mahoney found in October 2015, however, that the disability hearing could be a trauma trigger for Riniker, noting that Riniker reported having trouble sleeping the past couple of weeks. AR 680. Substantial evidence supports the ALJ's determination that the treatment records are inconsistent with Riniker's testimony and Dr. Shafer and Therapist Mahoney's opinion.

The ALJ also found Riniker's testimony and Dr. Shafer and Therapist Mahoney's opinion were inconsistent with Riniker's activities of daily living. AR 22-23. Riniker babysits for her two young grandchildren (at the time of the hearing, under the age of six) two to three days a week. AR 22, 47-48, 250, 266, 339, 532. She also spends about ten hours a week making appointments and doing the bookkeeping for her husband's automobile repair business (she testified that she may spend one and a half hours at a time doing paperwork). AR 44-46, 54-55, 250, 254, 266, 271, 339, 450. She is able to drive, run errands alone (such as grocery shopping), care for her personal grooming, pay bills, and do laundry, but she does not do the dishes, dust, sweep, or mop. AR 45, 271-73. She does not need reminders to take medicine. AR 272. She is able to prepare

10

sandwiches and frozen dinners. AR 44, 272. She is part of a bowling league and enjoys reading, watching television, and going to movies and hockey games. AR 59, 274, 339, 485-86. She spends time with her family and also has a good girlfriend she regularly gets together with. AR 486. As the ALJ noted, treatment notes reflect Riniker occasionally took her grandchildren to the drag races, went on vacation with her family, and went out to eat. AR 22, 479, 482, 486, 553. Substantial evidence supports the ALJ's determination that Riniker suffers from no more than mild limitations in her activities of her daily living, which is inconsistent with Dr. Shafer's and Therapist Mahoney's finding of moderate limitations. Further, the ALJ could find that Riniker's activities of daily living are inconsistent with moderate limitations in social functioning or concentration, persistence, or pace. In sum, the ALJ's determination that Riniker suffers from no more than minimal limitations as a result of her mental impairments is supported by substantial evidence. *See Buckner v. Astrue*, 646 F.3d 549, 553-54, 556-57 (8th Cir. 2011) (holding that substantial evidence supported the ALJ's determination that claimant's depression and anxiety resulted in no more than minimal functional limitations when the claimant "had several normal psychological evaluations" during periods he complained his medication was not helping his depression, he did not always "raise any concerns about his depression or the ineffectiveness of his medication," a consultative examiner opined the defendant "could effectively manage his depression and anxiety without medication or other assistance," and a state agency psychological consultant found no more than mild limitations in the four broad functional areas).

Finally, Riniker argues that the ALJ improperly "substitut[ed] his lay opinion regarding the raw medical dat[a] for that of [her] treating physicians," because Dr. Shafer and Therapist Mahoney's opinion is the only one in the record evaluating the severity of her mental impairments, and the ALJ assigned it minimal weight. Doc. 22 at 11. No state agency psychological consultant evaluated whether Riniker's mental impairments were severe, as she did not allege depression or PTSD in her application for DI benefits, and at the time of state-agency review (in March and April 2014), there was no evidence

11

in the treatment records that Riniker suffered from any mental impairments. Riniker argues that the ALJ's step-two finding must be supported by a medical opinion. Doc. 22 at 10-11. Riniker further argues that once the ALJ determined that Riniker suffered from medically determinable mental impairments, the ALJ was required to develop the record further and obtain the opinion of a state agency psychological consultant regarding the limitations imposed by Riniker's depression and PTSD. Doc. 22 at 14-18.

Riniker relies on cases holding that "[RFC] is a medical question" that must be supported by "[s]ome medical evidence." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *accord Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004); *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003). Riniker cites, and I have found, no cases standing for the proposition that "some medical evidence" (and specifically, the opinion of a medical professional) must support an ALJ's determination at step two that a claimant's medically determinable impairment causes no more than minimal functional limitations. *Cf. Ziemann*, 2017 WL 5495795, at *6 (rejecting claimant's argument that the ALJ erred in determining at step two that his degenerative disc disease was not severe based on a lack of supporting medical opinions when the ALJ gave good reasons for discounting a treating-source opinion, and the state agency consultants found "the evidence insufficient to evaluate plaintiff's claim" and to "show a severe impairment"). As discussed above, the ALJ gave good reasons for discounting the limitations set forth in Dr. Shafer and Therapist Mahoney's joint opinion, and the ALJ was not required to adopt those limitations.[8]

Riniker argues that the regulations required the ALJ to obtain an additional medical opinion from a state agency psychological consultant. Under 42 U.S.C. § 421(h), "[a]n initial determination under subsection (a), (c), (g), or (i) shall not be made until the Commissioner . . . has made every reasonable effort to ensure . . . that a qualified

---

[8] It is important to note that only one medical opinion was in the record. I do not address whether the ALJ's step-two finding would have been supported by substantial evidence if an opinion from a state agency psychological consultant had been in the record and also discounted by the ALJ.

psychiatrist or psychologist has completed the medical portion of the case review and any applicable [RFC] assessment" when "there is evidence which indicates the existence of a mental impairment." Subsection (a) of § 421 governs state-agency review, subsection (c) governs the Commissioner's review of determinations on the Commissioner's own motion, subsection (g) governs initial reviews by the Commissioner when state-agency review is unavailable, and subsection (i) governs continuing-eligibility determinations; subsection (d), which governs hearings by an ALJ when requested by the claimant, is not covered by § 421(h) by its terms. *See Plummer v. Apfel*, 186 F.3d 422, 433 (3d Cir. 1999) ("Because 42 U.S.C. § 421(d), which covers hearings before an ALJ, is excluded from § 421(h)'s purview, an ALJ is not required to employ the assistance of a qualified psychiatrist or psychologist in making an initial determination of mental impairment. Instead, the Commissioner's regulations provide an ALJ with greater flexibility than other hearing officers."); *see also* Proposed Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed. Reg. 62560, 62570 (Sept. 9, 2016) (discussing statute). The Commissioner's regulation "reflect[ing] the statutory provision" provides that when evidence indicates a claimant suffers a mental impairment:

> An initial determination by a [s]tate agency or the Social Security Administration that [a claimant is] not disabled (or a Social Security Administration review of a [s]tate agency's initial determination") . . . will be made only after every reasonable effort has been made to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable [RFC] assessment. If the services of qualified psychiatrists or psychologists cannot be obtained because of impediments at the [s]tate level, the Commissioner may contract directly for the services.

20 C.F.R. § 404.1503(e); Qualifications of Medical Professionals Evaluating Mental Impairments, 52 Fed. Reg. 33921, 33922, 33926 (Sept. 9, 1987) (noting upon regulation's adoption that it "clarif[ies] . . . that [the Social Security Administration] is also required to make every reasonable effort to have qualified psychiatrists or

psychologists review [s]tate agency initial unfavorable determinations"). As one court has reasoned:

> [Although a]t first glance, this regulation's reference to "review of a [s]tate agency's initial determination" may misleadingly appear to apply to an ALJ hearing[,] . . . . section 421(h)(1), which the regulation . . . implement[s], indicates that a "review" of an initial "determination" refers to the Commissioner's *sua sponte* review of at least half of all initial determinations, which is distinct from a claimant-requested ALJ hearing.

*Rodgers v. Colvin*, No. 3:15-CV-1449 (JCH), 2016 WL 4432678, at *9 (D. Conn. Aug. 17, 2016) (citation omitted). Thus, "[l]ike section 421(h)(1), th[e] regulation [20 C.F.R. § 404.1503(e)] also appears inapplicable to an ALJ." *Id.*

The regulations further provide that a state agency psychological consultant must assess "medical severity" of mental impairments by preparing a psychiatric review technique form[9] (applying the "special technique" and evaluating the four broad functional areas), unless "there is no medical evidence to be evaluated," in which case, a state agency disability examiner may prepare the form without the aid of a state agency psychological consultant. *See* 20 C.F.R. §§ 404.1520a(e)(1)-(2), 404.1615(c)(2). The ALJ must include the "pertinent findings and conclusions" applying the special technique in "the written decision" (which the ALJ did here). 20 C.F.R. § 404.1520a(e)(4). The regulations provide that the ALJ "may" (but is not required to) "return the case to the [s]tate agency . . . for completion of the" psychiatric review technique form "[i]f the [ALJ] requires the services of a medical expert to assist in applying the technique." 20 C.F.R. § 404.1520a(e)(5); *see also* 20 C.F.R. § 404.941(a)-(b).

Relying on this authority (especially § 404.1520a),[10] Riniker argues that once the ALJ determined that she had a medically determinable mental impairment, the regulations

---

[9] Sometimes abbreviated PRT or PRTF in caselaw.

[10] In addition, Riniker relies on Social Security Ruling (SSR) 96-6p, 61 Fed. Reg. 34466, 34468 (July 2, 1996), which provides that "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the [ALJ] . . . must be received into the record as expert opinion evidence and given

14

required the ALJ to obtain an assessment of her functional limitations from a state agency psychological expert. If the ALJ determines that the claimant suffers from a *severe* mental impairment, 20 C.F.R. § 404.1520a requires the ALJ to obtain an opinion from a state agency psychological consultant applying the special psychiatric review technique. *See Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1048-50 (10th Cir. 1993) (cited favorably by the Eighth Circuit in *Montgomery v. Shalala*, 30 F.3d 98, 101 (8th Cir. 1994)); *cf. Cuthrell v. Astrue*, 702 F.3d 1114, 1118 (8th Cir. 2013) (noting that when the ALJ fails to document use of the special technique when evaluating mental impairments, "[t]his court has found harmless error where there is no credible evidence of a severe mental impairment"). But when substantial evidence supports the ALJ's

---

appropriate weight." SSR 96-6p may require the opinion of a psychological consultant at step three when the ALJ determines whether a claimant's impairments meet or equal a listing, but not at step two (at issue here), when the ALJ determines whether an impairment is severe. *See Cobb v. Berryhill*, No. 4:17-CV-00106-A, 2017 WL 6492078, at *4-5 (N.D. Tex. Nov. 29, 2017), *report and recommendation adopted*, 2017 WL 6493237 (N.D. Tex. Dec. 15, 2017). Riniker also argues that in the preamble to rules published in the Federal Register, the Commissioner "confirmed its . . . policy that adjudicators 'must' obtain" an opinion from a medical consultant in any case involving a mental impairment. Doc. 22 at 16. Riniker relies on the preamble to "new rules . . . provid[ing] authority to test procedures that modify the disability determination process." Testing Modifications to the Disability Determination Procedures, 60 Fed. Reg. 20023, 20023 (Apr. 24, 1995). When addressing concerns in the Federal Register about "the apparent lack of involvement of the medical consultant" under the single decisionmaker test model, the Social Security Administration stated:
> The decisionmaker will consult with the medical consultant whenever appropriate. This means that . . . . before making a determination that an individual is not under a disability in any case which indicates the existence of a mental impairment, the decisionmaker will make every reasonable effort to ensure that a qualified psychiatrist or psychologist completes the medical portion of the case review and any applicable [RFC] assessment. In addition, the decisionmaker will consult with the medical consultant in all other situations where the decisionmaker finds that a consultation is appropriate. . . . [D]ecisionmakers will comply with the statutory requirements regarding the use of medical consultants . . . in all denials of claims based upon mental impairments.

60 Fed. Reg. at 20025. This is consistent with the regulatory authority already discussed (and does not support Riniker's argument that the ALJ "must" obtain an opinion from a psychological consultant—despite Riniker's use of quotation marks in her briefing, "must" is not used). *See also Cobb*, 2017 WL 6492078, at *4-5.

determination that a claimant's mental impairment is not severe, then "there [is] no need for [the ALJ] to obtain the assistance of a mental health professional in completing the [psychiatric review technique]." *Hardy v. Chater*, 64 F.3d 405, 408 (8th Cir. 1995) (holding that when the ALJ determined the claimant suffered from a nonsevere mental impairment of having a history of alcohol abuse, neither 42 U.S.C. § 421(h) nor the regulations required review by a state agency psychological consultant); *see also Russell v. Apfel*, No. 98-1239EM, 1999 WL 721342, at *1 (8th Cir. 1999) (per curiam) (holding that the ALJ was not required to remand the case to the state agency for completion of the psychiatric review technique when the claimant did not allege depression before the hearing, and the ALJ determined the claimant's depression to be non-severe).

Here, Riniker did not allege any mental impairments in her application for DI benefits. At the time of state-agency review, she had not received any mental-health treatment, she had not been diagnosed with any mental impairments, and treatment records for her physical problems did not reflect any mental-health problems. By the time the ALJ issued his decision, however, Riniker had been diagnosed with depression and PTSD, and she had been taking prescription medications and receiving psychotherapy from Dr. Shafer and Therapist Mahoney for more than a year. The ALJ considered all the evidence in the record and determined that although Riniker suffered from depression and PTSD, those impairments were not severe. Because substantial evidence supported the ALJ's determination that Riniker's mental impairments were not severe (as discussed above), the ALJ was not required to obtain opinion evidence from a state agency psychological consultant.

### B. Failure to Mention Riniker's Lengthy Work History

Under *Polaski v. Heckler*, the ALJ "must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record." 739 F.2d 1320, 1322 (8th Cir. 1984), *vacated*, 476 U.S. 1167 (1986),

*reinstated*, 804 F.2d 456 (8th Cir. 1986).[11] The ALJ was aware of the claimant's work history, noting that she "was reportedly diagnosed with Raynaud's more than twenty years ago" but "successfully worked at substantial gainful activity through 2011." AR 25. But the ALJ did not explicitly mention Riniker's "exemplary work history" when evaluating the credibility of her subjective complaints, which Riniker argues is an error that requires remand. Doc. 22 at 19-20. She concedes that work history does not "'trump' other valid credibility factors," arguing only that the ALJ should have at least mentioned her work history in his credibility analysis. *Id.*

"The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004). "[An] ALJ d[oes] not err simply by failing to mention [the] claimant's work history." *Dreesman v. Colvin*, No. 15-CV-00121-CJW, 2016 WL 6436595, at *12 (N.D. Iowa Oct. 28, 2016) (citing *Robertson v. Astrue*, 481 F.3d 1020, 1025-26 (8th Cir. 2007); *Leahy v. Astrue*, No. 4:10CV60524AGF, 2011 WL 4407452, at *8 (E.D. Mo. Sept. 21, 2011); *Bryant v. Astrue*, No. 4:08CV02910JTR, 2009 WL 3062311, at *4 (E.D. Ark. Sept. 17, 2009)). Moreover, because the ALJ gave good reasons, supported by substantial evidence, for discrediting Riniker's subjective complaints (as discussed above), any error in failing to mention her work history would be harmless. *See id.* at *12-13.

### III. CONCLUSION

I find the ALJ properly weighed Riniker's subjective complaints and Dr. Shafer and Therapist Mahoney's opinion, and the ALJ's determination at step two that Riniker suffers no severe mental impairments is supported by substantial evidence. The ALJ's

---

[11] The court did not explicitly say that it was reinstating the original *Polaski* opinion, but the Eighth Circuit has recognized that it "effectively reinstat[ed]" *Polaski*. *Jones v. Callahan*, 122 F.3d 1148, 1151 n.3 (8th Cir. 1997).

decision is **affirmed**. Judgment shall enter in favor of the Commissioner and against Riniker.

**IT IS SO ORDERED** this 30th day of March, 2018.

_____
Kelly K.E. Mahoney
United States Magistrate Judge
Northern District of Iowa